```
 1  TERRY A. DAKE, LTD.
    11811 North Tatum Boulevard
 2  Suite 3031
    Phoenix, Arizona  85028-1621
 3  Telephone: (480) 368-5199
    Facsimile: (480) 368-5198
 4  tdake@cox.net

 5  Terry A. Dake - 009656

 6  Attorney for Trustee
```

### IN THE UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | In Chapter 7 Proceedings |
| ALEXANDER PAPAKYRIAKOU, <br> ROXANE J. PAPAKYRIAKOU, | Case No. 2:11-BK-00003-CGC |
| Debtors. | |
| PAPAS INVESTMENT <br> LIMITED PARTNERSHIP; | |
| Debtor. | |
| DAVID A. BIRDSELL, TRUSTEE, | **Adversary No. 2:12-AP-227** |
| Plaintiff, | |
| v. | |
| ALEXANDER PAPAKYRIAKOU, <br> ROXANE J. PAPAKYRIAKOU, | |
| Defendants. | |

**COMPLAINT**

David A. Birdsell ("Birdsell"), as trustee of the bankruptcy estate of Alexander Papakyriakou and Roxane J. Papakyriakou, Bankruptcy Case No. 2:11-BK-00003-CGC, for his Complaint, says as follows:

1. Birdsell is the duly appointed trustee of the bankruptcy estate of Alexander Papakyriakou and Roxane J. Papakyriakou, Bankruptcy Case No. 2:11-BK-00003-CGC (collectively "debtors"). This bankruptcy

1 case was commenced as a voluntary proceeding under Chapter 7 on January 2, 2011.

2. This Court has jurisdiction of this matter pursuant to 28 U.S.C. §157(b)(2). This is a core proceeding.

3. Gregory Neal Papakyriakou ("Greg") is the son of the debtors. Greg is an insider as that term is defined in 11 U.S.C. §101(31).

4. Marc Robert Papakyriakou ("Marc") is the son of the debtors. Marc is an insider as that term is defined in 11 U.S.C. §101(31).

5. During 2007, the debtors' financial affairs began a downward spiral. For example, due to a downturn in the economy, the debtors reported that they were forced to sell off jewelry worn by Roxane Papakyriakou to pay ongoing business expenses. At the same time, the debtors reported that they had fake jewelry manufactured for Roxane Papakyriakou to wear to maintain the appearance of financial success.

6. On or about October 10, 2007, the debtors received a 17 page letter from attorneys representing investors in various real estate projects operated by the debtors outlining a variety of insider transactions regarding those investments and demanding information regarding those investments and the transactions. By November 15, 2007, the information demanded had not been provided by the debtors and the investors advised of their intent to proceed with litigation. By February 21, 2008, the investors had filed a complaint with the Maricopa County Superior Court.

2

7. On March 11, 2008, a promissory note owed to Security Pacific Bank, which was guaranteed by the debtors, went into default.

8. On March 25, 2008, two more promissory notes owed to Security Pacific Bank, which were guaranteed by the debtors, went into default.

9. On April 1, 2008, a promissory note owed to Sterling Savings, which was guaranteed by the debtors, matured and went unpaid.

9.A. On May 22, 2008, additional investors in real estate projects operated by the debtors sent a 10 page demand letter outlining a variety of claims against the debtors due to fraud, insider transactions and other misconduct of the debtors.

10. On June 14, 2008, a promissory noted owed to Stearns Bank, which was guaranteed by the debtors, matured and went unpaid.

11. Not later than May 12, 2008, the debtors began to dispose of their assets. The following transfers occurred:

A. From an entity they owned and controlled, Papas Investment Limited Partnership ("PILP"), the debtors wrote a check for $10,000.00 to make a deposit for the purchase of a house at 4041 E. Cortez, Phoenix, AZ (the "Cortez house"). At closing, the house was titled in the name of Cobea Associates, LLC ("Cobea"), an entity ostensibly owned by Alex Papkyriakou's sister, Xanthipi Papakyriakou ("Xanthipi") who lives in South Africa. The debtors, along with Greg and Marc (when they are home from college) now live in that house.

B. On June 20, 2008, the debtors transferred $369,000.00 from PILP to Chicago Title to close the purchase of the Cortez house.

3

C. On June 30, 2008, the debtors transferred their house in Paradise Valley, and all of its contents, to Cobea. The debtors then, ostensibly, leased back the house and its contents from Cobea and continued to live there until moving to the Cortez house.

D. On June 30, 2008, the debtors caused PILP to transfer a business entity owned by PILP, Horseshoe PV Realty Investments, LLC ("HPV"), to Cobea. At the time of the transfer, HPV owned a free and clear commercial building purchased for $2.7 million in cash on December 14, 2006. HPV also owned collector automobiles.

E. On July 31, 2008, the debtors caused PILP to transfer free and clear real property in Scottsdale, Arizona worth $500,000.00 to Cobea.

F. On August 6, 2008, the debtors caused PILP to transfer a multi-million dollar house and a condominium owned by PILP in California to Cobea.

12. In the meantime, additional loan defaults continued to occur and litigation was filed against the debtors. The following events occurred:

A. On July 1, 2008, a promissory noted owed to Sand Capital, which was guaranteed by the debtors, went into default.

B. On July 29, 2008, a promissory noted owed to First Fidelity Bank, NA, which was guaranteed by the debtors, matured and went unpaid.

C. On September 1, 2008, the payment due on a promissory note owed to First Horizon Home Loans, a division of First

4

Tennessee Bank, a debt guaranteed by the debtors, went unpaid, causing a default in the loan.

        D. On September 1, 2008, the payment due on a second promissory noted owed to Sand Capital, LLC, a debt guaranteed by the debtors, went unpaid, causing a default in the loan.

        E. On October 1, 2008, the payment due on a promissory noted owed to Evergreen Environmental Development Corp., LLC, a debt guaranteed by the debtors, went unpaid, causing a default in the loan.

        F. On October 22, 2008, a third group of investors in the debtors' real estate projects, the Goodman family, demanded to see documents related to those investments. The documents were not provided and a lawsuit was filed on February 18, 2009.

        G. On October 31, 2008, a promissory note owed to Stearns Bank, NA, a debt guaranteed by the debtors, went into default.

        H. On November 3, 2008, the payment due on a promissory note owed to Bank of Hemet, a debt guaranteed by the debtors, went unpaid, causing a default in the loan.

        I. On November 14, 2008, two loans owed to Bank of Oklahoma, which were personally guaranteed by the debtors, went into default.

        J. On November 26, 2008, the debtors were sued in the Maricopa County Superior Court by Lenore Schupak et al. for the appointment of a receiver, an accounting and related relief.

        K. On December 11, 2008, a promissory note owed to Brown Retail, LLC, a noted guaranteed by the debtors, went into default.

5

    L. On January 26, 2009, three separate lawsuits were filed by Bank of Oklahoma, NA due to defaults on promissory notes owed to the bank, each of which were guaranteed by the debtors.

  13. As part of their scheme to denude themselves of their assets so that their creditors could not recover, the debtors concocted a debt to Greg and Marc, as follows:

    A. First, the debtors fabricated an alleged debt owed by PILP to Greg and Marc in the amount of $1,913,900.00.

    B. Then, the debtors purported to pay the debts ostensibly owed to Greg and Marc by PILP by agreeing to transfer the debtors' interest in BPRE Holding Company ("BPRE") to Greg and Marc and personally signed a promissory note to Greg and Marc for $871,618.00.

    C. Finally, Greg and Marc purported to rescind the transfer of BPRE to them, and the debtors agreed to pay Greg and Marc another $1,042,281.00. As a result, the alleged debt of $1,913,900.00, which was ostensibly owed to Greg and Marc by PILP, was transformed into two promissory notes from the debtors, one for $871,618.00 and one for $1,042,281.00, which were now owed to Greg and Marc by the debtors.

  14. The debtors then began to transfer cash to Greg and Marc as follows:

    A. On August 8, 2008, the debtors received a refund of a deposit in the amount of $100,000.00. Five days later, on August 13, 2008, the debtors transferred $15,000.00 to Greg and $20,000.00 to Marc.

    B. On February 10, 2009, the debtors received a federal income tax refund in the amount of $514,458.66 and deposited that check

6

Case 2:12-ap-00227-BMW Doc 1 Filed 01/31/12 Entered 01/31/12 10:42:32 Desc
Main Document Page 6 of 12

into their account at Compass Bank. Instead of paying their other creditors, the debtors, on February 11, 2009, transferred $200,000.00 of the tax refund to Greg and $200,000.00 to Marc.

   C. On March 9, 2009, less than 30 days later, the debtors transferred another $100,000.00 from the half million dollar tax refund, this time $50,000.00 to Greg and $50,000.00 to Marc.

   D. On November 2, 2009, the debtors received a second income tax refund, this time for $638,294.41. Again, instead of paying their other creditors, the debtors, on the same day, transferred $85,000.00 of the tax refund to Greg and $105,000.00 to Marc. At the same time, the debtors transferred $400,000.00 of the refund to Cobea.

   E. On January 13, 2010, the debtors transferred $10,000.00 to Greg and $10,000.00 to Marc.

   F. On March 30, 2010, the debtors received a third income tax refund, this time for $75,390.00. Again, instead of paying their other creditors, the debtors, on the very next day, transferred $65,000.00 of the tax refund to Marc.

  15. The transfers of the debtors' assets to Greg and Marc on January 13, 2010 and March 30, 2010 occurred less than one year prior to the filing of this bankruptcy case and were intended to hinder, delay and defraud the creditors of the debtors and is grounds for the denial of their discharge pursuant to 11 U.S.C. §727(a)(2)(A).

  16. When the debtors filed their Statement of Financial Affairs in this case on January 18, 2011, they failed to disclose any of the transfers that they made to Greg and Marc as set forth in ¶¶14

7

B, C, D, E and F, each of which occurred during the two years prior to the filing of this bankruptcy case, despite their obligation to do so. Moreover, even if Greg and Marc were legitimate creditors of the debtors, the debtors failed to disclose the payments made to Greg and Marc as set forth in ¶¶14E and F, both of which occurred during the one year prior to the filing of this bankruptcy case, despite their obligation to do so.

17. The failure of the debtors to disclose these transfers to their children was knowing and fraudulent and is grounds to deny the discharge of the debtors pursuant to 11 U.S.C. §727(a)(4)(A).

18. After allegedly agreeing to pay Greg and Marc over $1.9 million dollars to give up their interest in PILP, the debtors then allowed the books and records of PILP to be thrown away at the end of 2009, even though the 2008 federal income tax return of PILP reflected that PILP had over $9.2 million in assets. The debtors' failure to maintain the books and records of PILP is grounds to deny their discharge pursuant to 11 U.S.C. §727(a)(3).

19. On January 28, 2009, the debtors transferred $48,000.00 to Cobea, ostensibly as rent on the Paradise Valley residence that the debtors had previously conveyed to Cobea for no consideration.

20. On March 16, 2009, the debtors transferred their life insurance with Guardian Life Insurance, which had a cash value in excess of $223,000.00, to a life insurance trust.

21. On March 23, 2009, the debtors transferred four life insurance policies with State Farm Insurance, which had a cash value in excess of $105,000.00, to a life insurance trust.

8

22. On April 6, 2009, the debtors transferred $24,000.00 to Cobea, ostensibly as "summer rent" for the real property in California that the debtors had previously conveyed to Cobea for no consideration.

23. On May 22, 2009, the debtors caused $100,000.00 to be transferred from the brokerage account of PILP to Cobea.

24. On June 19, 2009, the debtors caused $100,000.00 to be transferred from the brokerage account of PILP to an account in the name of Cobea at Compass Bank. Both of the debtors held signature authority over the Cobea account, and the funds in the account were then used to pay the debtors' personal expenses.

25. On August 4, 2009, the debtors received an income tax refund of $1,040,040.91. On August 5, 2009, the debtors used $1,000,000.00 of the tax refund to pay down the loan on the real property in California which the debtors had previously conveyed to Cobea for no consideration.

26. On August 10, 2009, the debtors received an income tax refund of $153,120.78. On August 10, 2009, the debtors paid $150,000.00 from that refund to settle a pending lawsuit which named the debtors, Cobea and Xanthipi as defendants. Cobea and Xanthipi were released from the lawsuit in exchange for the debtors' payment.

27. On October 6, 2009, the debtors caused PILP to transfer $90,000.00 to Cobea.

28. On November 3, 2009, the debtors transferred $400,000.00 to Cobea.

29. On December 15, 2009, Alex Papakyriakou instructed his accountant, Leon Boroda, to write off the loans that Cobea and HPV owed

9

to PILP by reducing the debtors' capital account in PILP, and thereby eliminating over $11 million of assets of PILP.

30. On January 19, 2010, the debtors caused $30,000.00 to be transferred from PILP's brokerage account to Greg.

31. On February 17, 2010, the debtors caused $27,937.98 to be transferred to Cobea's account at Legacy Bank.

32. On October 29, 2010, the debtors transferred $6,000.00 to Cobea's account at Legacy Bank.

34. The Court has determined that PILP is an alter ego of the debtors.

35. When the debtors filed their Statement of Financial Affairs in this case on January 18, 2011, they failed to disclose any of the transfers set forth in ¶¶19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31 and 32, each of which occurred during the two years prior to the filing of this bankruptcy case, despite their obligation to do so.

36. The failure of the debtors to disclose these transfers were knowing and fraudulent and is grounds to deny the discharge of the debtors pursuant to 11 U.S.C. §727(a)(4)(A).

37. At Item 10 of their Statement Of Financial Affairs at Admin. Dkt. No. 30, the debtors falsely reported that they had sold their American Airlines frequent flyer miles to Marc on December 29, 2010, just 4 days before this bankruptcy case was filed, for $7,000.00. In fact, no such sale ever occurred, as American Airlines does not permit the sale or assignment of frequent flyer miles.

10

38. The debtors' false statement regarding the sale of their American Airlines frequent flyer miles was knowing and fraudulent and constitutes a false oath or account and is grounds for the denial of the debtors' discharge pursuant to 11 U.S.C. §727(a)(4)(A).

39. If in fact the alleged sale of the frequent flyer miles actually occurred, then this transfer by the debtors was intended to hinder, delay and defraud their creditors and is grounds for the denial of their discharge pursuant to 11 U.S.C. §727(a)(2)(A).

40. At Item 10 of their Statement Of Financial Affairs at Admin. Dkt. No. 30, the debtors falsely reported that they had assigned their membership deposit at Whisper Rock golf course to Cobea. In fact, no such transfer ever occurred, as Whisper Rock does not allow corporate ownership of memberships at Whisper Rock.

41. The debtors' false statement regarding the sale of their Whisper Rock deposit was knowing and fraudulent and constitutes a false oath or account and is grounds for the denial of the debtors' discharge pursuant to 11 U.S.C. §727(a)(4)(A).

42. At the time of the filing of this bankruptcy case, the debtors were in possession, custody and control of all of their household furnishings which were ostensibly sold to and leased back from Cobea, along with two luxury Mercedes Benz automobiles which were ostensibly owned by Cobea, even though, as late as February 26, 2010, PILP was still making lease payments of $4,187.58 per month to Mercedes Benz.

43. The debtors failed to disclose their possession, custody and control of these assets at Item 14 of their SOFA, despite their

11

obligation to do so.  Instead, they falsely reported that they were not in possession or control of any property which belonged to another person.

    44.  The debtors' false statement regarding their possession, custody and control of these assets was knowing and fraudulent and constitutes a false oath or account and is grounds for the denial of the debtors' discharge pursuant to 11 U.S.C. §727(a)(4)(A).

    **WHEREFORE**, the trustee prays:

    A.  For the entry of an order denying the debtors' discharge pursuant to 11 U.S.C. §727(a)(2)(A), §727(a)(3), and §727(a)(4)(A).

    DATED January 31, 2012.

*TERRY A. DAKE, LTD.*

By /s/ TD009656
    Terry A. Dake – 009656
    11811 North Tatum Boulevard
    Suite 3031
    Phoenix, Arizona 85028-1621
    Attorney for Trustee

12